UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KIMBERLEE DIANE M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C25-749-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating the medical opinion evidence and Plaintiff's testimony. (Dkt. # 9.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 11.) Plaintiff filed a reply. (Dkt. # 12.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1970, has at least a high school education, and has worked as a certified nursing assistant. AR at 32, 272. Plaintiff was last gainfully employed in 2014. *Id.* at 19, 239, 272.

In February 2022, Plaintiff applied for benefits, alleging disability beginning October 1, 2014. AR at 220-26. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 125. After the ALJ conducted a hearing in March 2024, during which Plaintiff amended the alleged onset date to the application date of February 23, 2025, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 14-40, 51-84.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that Plaintiff has the severe impairments of depressive disorder, posttraumatic stress disorder, personality disorder, attention deficit hyperactivity disorder, substance addiction disorder in remission, and bipolar disorder. AR at 19. She has the residual functional capacity ("RFC") to perform medium work except she is able to understand, remember, and carry out simple instructions and tasks; she is able to use judgment to make simple work-related decisions; she cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; she can deal with only rare changes in a work setting; she can have no contact with the public; she is capable of working in proximity to but not in coordination with coworkers; and she can have occasional contact with supervisors. *Id.* at 22-23.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

---

[2] 20 C.F.R. § 416.920.

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV. DISCUSSION

A. The ALJ Did Not Err in Evaluating Medical Evidence

Under regulations applicable to this case, the ALJ must articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

ORDER - 3

          1.       *Paul Hammer, M.D.*

In January 2024, Dr. Hammer opined that Plaintiff experienced marked limitations in social interaction, instruction-following, workplace conduct, and stress management. AR at 1847-51. He further stated she would likely be absent more than three days per month and that she had severe limitations in cognitive functions, attendance, and self-management. *Id.*

The ALJ found Dr. Hammer's opinion unpersuasive because his contemporaneous treatment notes did not support such severe limitations. AR at 30-31. Plaintiff acknowledges that Dr. Hammer's treatment notes were generally unremarkable. Nonetheless, she argues the ALJ failed to appreciate that normal mental status findings in a clinical environment are not necessarily inconsistent with functional limitations in a work setting. (Dkt. ## 9 at 4-6, 12 at 2-4.) Plaintiff notes that Dr. Hammer supported his assessment by referencing her abnormal cognitive and behavioral clinical findings. AR at 1849 ("[Plaintiff] speaks rapidly, is difficult to interrupt, goes off on irrelevant tangents, has extremely labile moods, appears irritable, sad, angry, cannot focus on effective problem solving, reacts impulsively, and cannot understand why her life is out of control and her actions are not helping.").

In contrast with Dr. Hammer's general assertion of abnormalities, however, the ALJ found that Dr. Hammer's treatment notes over two years consistently reflected that, although Plaintiff exhibited pacing at times, she behaved appropriately, had normal speech and mood, and was oriented, attentive, and logical during treatment sessions. AR at 30-31 (citing *id.* at 1491, 1514, 1535, 1549, 1678, 1713, 1743, 1803). Based on this evidence, the ALJ reasonably determined that Dr. Hammer's clinical findings supported only moderate limitations. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015).

The ALJ also found the severity of Dr. Hammer's opinion inconsistent with his treatment notes concerning Plaintiff's improvement with medication. AR at 31; *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."). Plaintiff counters that the ALJ failed to adequately explain why the ALJ's interpretation of the evidence should be favored over that of Dr. Hammer, who opined that "[e]ven when she is stable on her meds, she is still requiring a lot of support for fairly basic function let alone actually doing a job." (Dkt. ## 9 at 7 (citing AR at 1851), 12 at 3-5.)

This argument fails to establish error in the ALJ's determination. The ALJ found Dr. Hammer's November 2023 assessment—that although Plaintiff was not consistently medicated, she "has been doing much better than she has in the past when she was not medicated for prolonged periods of time[ ]"—more persuasive than his later opinion from January 2024 that even while stable, she required a lot of support.[3] AR at 31 (citing *id.* at 1804, 1847-51). The ALJ reasonably determined that Dr. Hammer's November 2023 notes, which involved a detailed discussion of Plaintiff's symptoms and treatment on a longitudinal basis, were more determinative than Dr. Hammer's general assertion two months later of abnormal symptoms. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work.").

---

[3] Dr. Hammer's narrative assessment also notes that during the fall of 2022, Plaintiff "appeared to be doing fairly well and was stable . . . In recent months, we have continued to observe significant overall improvement in medication adherence . . . Recent labs indicate stability and overall she continues to do better with much improved engagement in therapy now that mood and anxiety symptoms are in much better control." AR at 1804. In September 2023, she reported "having a good summer and . . . [spending] time with family in a positive sort of way . . . she continues to do fairly well with good overall stability of mood." *Id.*

Finally, the ALJ found Dr. Hammer's opinion unpersuasive because it was inconsistent with the longitudinal record, which reflected consistently unremarkable status exam findings from 2022 through 2023. AR at 31 (citing *id.* at 1498, 1509, 1530, 1544, 1555, 1635, 1656, 1664, 1672, 1729, 1754, 1807, 1823 (noting appropriate behavior, engaged, cooperative, and normal thought process)). Plaintiff argues in conclusory fashion that this reasoning is not supported by substantial evidence, essentially asking the Court to re-weigh the evidence in her favor. (Dkt. # 9 at 8-9.) When evidence is susceptible to more than one rational interpretation, however, the Commissioner's view must be upheld. *See Smartt*, 53 F.4th at 494.

In sum, the ALJ evaluated Dr. Hammer's opinion and weighed conflicting evidence of its narrative support against his contemporaneous treatment notes and the overall record, and provided specific and legitimate reasons, based on Plaintiff's unremarkable clinical findings and improvement with medication, for finding Dr. Hammer's opinion unpersuasive.

    *2.    Tasmyn Bowes, Psy.D., and Holly Petaja, Ph.D.*

In March 2022, Dr. Bowes evaluated Plaintiff for the Washington Department of Social and Health Services. AR at 1073-1079. Dr. Bowes opined that Plaintiff had severe limitations understanding, remembering, and persisting in tasks involving detailed instructions; maintaining a schedule, regular attendance, and punctuality without special supervision; adapting to changes in a routine work setting; maintaining appropriate behavior in a work setting; and completing a normal workday and workweek without interruptions. *Id.* at 1076-77. That same month, Dr. Petaja affirmed Dr. Bowes' opinion. *Id.* at 1070-72.

The ALJ found these opinions unpersuasive because they were inconsistent with longitudinal evidence showing that, even without full medication compliance, Plaintiff "had been doing much better." AR at 30 (citing *id.* at 1804 (Dr. Hammer's narrative assessment from

November 2023)). The ALJ also cited numerous examinations showing that, even when anxious, Plaintiff remained cooperative and appropriate, continued to remain oriented with a logical or goal-directed thought process, and was attentive for the interview. *Id.* (citing *id.* at 1491, 1509, 1514, 1535, 1544, 1549, 1635, 1656, 1664, 1672, 1678, 1743, 1754, 1803, 1807, 1823). The ALJ reasonably concluded that Plaintiff's improvement and unremarkable status findings undermined the opinions that Plaintiff had severe limitations in areas such as maintaining appropriate behavior in a work setting and completing a normal workday. *Id.*

Plaintiff argues that the ALJ failed to support his consistency findings, reiterating her arguments concerning the ALJ's evaluation of the support for Dr. Hammer's opinion. (Dkt. ## 9 at 12-13; 12 at 7-8.) As previously discussed, however, substantial evidence supports the ALJ's evaluation of Dr. Hammer's opinion. Plaintiff's conclusory assertion otherwise fails to establish harmful error in the ALJ's findings. *See Putz v. Kijakazi*, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022).

Plaintiff also contends that the ALJ failed to specifically address Dr. Petaja's finding that Dr. Bowes' opinion was consistent with the objective medical evidence. (Dkt. ## 9 at 13-15, 12 at 7-8.) However, Dr. Petaja only reviewed Dr. Bowes' opinion and did not describe any other sources of objective medical evidence. *See Parman v. O'Malley*, 2024 WL 4850825, at *2 (9th Cir. Nov. 21, 2024) (where one doctor adopts another doctor's opinion, an ALJ's reasons for finding the first doctor's opinion unpersuasive apply with equal force to the second opinion).

ORDER - 7

In sum, the ALJ provided specific and legitimate reasons for finding the doctors' opinions unpersuasive due to inconsistencies with the longitudinal evidence concerning Plaintiff's unremarkable clinical findings and improvement with medication.[4]

**B.      The ALJ Did Not Err in Evaluating Plaintiff's Testimony**

Absent evidence of malingering, an ALJ must provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). However, the ALJ need not accept every allegation or analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff argues that the ALJ failed to explain why her coping behaviors and pacing would only limit her ability to perform at a production rate, but not her ability to complete a standard workday or workweek without distracting herself or coworkers. (Dkt. # 9 at 15-17.) She contends that the ALJ's "unsupported lay assumption" that employers would tolerate such self-soothing behaviors is an insufficient basis to reject her testimony. (*Id.* at 17.)

While acknowledging the severity of Plaintiff's testimony, the ALJ found it unpersuasive due to conflicts with medical records that showed improvement with medication, periods of stability, and normal mental status findings. AR at 23-29 (citing *e.g.*, *id.* at 523, 589, 1000, 1067, 1098, 1101, 1107, 1116, 1119, 1372-73, 1595). The ALJ also cited Plaintiff's daily activities, caring for animals, gardening, walking with friends, visiting family, sailing, and volunteering, as

---

[4] Because the ALJ's consistency findings are supported by substantial evidence, the Court need not address Plaintiff's arguments about differing agency standards or supportability. *See Woods*, 32 F.4th 792-94; *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

evidence precluding total incapacitation.[5] *Id.* Moreover, the ALJ acknowledged Plaintiff's limitations regarding concentration, distractions, and sensitivity, by including restrictions limiting public contact, requiring proximity but not coordination with coworkers, and allowing only occasional supervisory contact. *Id.* at 22-23; *see Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009) (RFC must include all supported functional limitations).

In sum, the ALJ identified specific, clear, and convincing examples of conflicts with Plaintiff's cognitive and behavioral testimony, on the one hand, and the objective medical findings and Plaintiff's daily activities, on the other. Given these conflicts, the ALJ reasonably discounted the severity of Plaintiff's testimony.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 9th day of October, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[5] Citing, *e.g.*, AR at 1064 (taking care of animals), 1111 (reporting feeling productive and going walking with a friend), 1114 (walking as exercise), 1373 (noting Plaintiff likes to garden, ride bikes, and work with crafts and that "she would like to have her own business, fix up a vintage trailer, and travel."), 1523 ("She has been very active riding her bike in to town regularly as well as doing yard work."), 1539 ("[S]he was out sailing with her cousins on Monday."), 1593 ("She had an enjoyable trip to Spokane with a cousin to visit an elderly family member."), 1633 (noting various ways Plaintiff works to ground herself), 1662 ("The patient has been walking with friends and finds that the exercise helps her sleep better."), 1666 (reporting Plaintiff feels less anxious, "spent 8 days in California visiting old childhood friends[,]" volunteered with her friend's church, has been collecting garbage alongside the highway during walks, and wants to start running), 1670 (describing Plaintiff's plans to go hiking and stating that she "started a bingo group at the community center where she is volunteering"), 1692 (noting Plaintiff was dog sitting for her aunt and discussion about boundaries in her role as a volunteer and plans to meet with an exercise group), 1718 ("The patient went to a concert with friends in Anacortes . . . She will be returning next weekend for another family gathering."), 1738 (dog sitting).